IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**MARIO RODRIGUEZ-RAMIREZ,**
*Petitioner*,

*v.*

**STATE OF ARIZONA,**
*Respondent*.

No. CR-25-0157-PR
Filed August 12, 2026

Special Action from the Superior Court in Maricopa County
The Honorable Kristin Culbertson, Judge
No. CR2021-101028-001
**AFFIRMED**

Opinion of the Court of Appeals, Division One
260 Ariz. 7 (App. 2025)
**VACATED**

COUNSEL:

Rachel H. Mitchell, Maricopa County Attorney, Quinton S. Gregory (argued), Deputy County Attorney, Phoenix, Attorneys for State of Arizona

Natalee Segal, Ballecer & Segal, LLP, Phoenix; Jocquese Blackwell (argued), Blackwell Law Office, PLLC, Phoenix, Attorneys for Mario Rodriguez-Ramirez

Austin C. Yost, Andrew T. Fox, Coppersmith Brockelman PLC, Phoenix, Attorneys for Amicus Curiae Arizona Attorneys for Criminal Justice

John J. Trebon, John Trebon, P.C., Flagstaff; Lynne M. Cadigan, Lynne Cadigan Law, PLLC, Tucson; John C. Manly, Manly, Stewart & Finaldi, Irvine, California, Attorneys for Amici Curiae Minor Doe Children

Lina Garcia, Maricopa County Office of the Public Defender, Interim Director, Kristen Reller, Deputy Public Defender, Phoenix, Attorneys for Amicus Curiae Maricopa County Office of the Public Defender

Kristin K. Mayes, Attorney General, Alice M. Jones, Deputy Solicitor General/Section Chief of Criminal Appeals, Casey D. Ball, Assistant Attorney General, Phoenix, Attorneys for Amicus Curiae Arizona Attorney General

---

JUSTICE BEENE authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ and JUSTICES BOLICK, MONTGOMERY, KING, and CRUZ joined.

---

JUSTICE BEENE, Opinion of the Court:

¶1        Arizona law recognizes evidentiary privileges that allow the privilege holder to refuse to disclose certain confidential information and to prevent its disclosure by others.  *See* A.R.S. § 13-4062.  In this case, we consider what a criminal defendant must establish to invoke the clergy-penitent privilege under § 13-4062(3) ("Clergy-Penitent Privilege ").  Because the communication at issue here was not a "confession," we conclude the privilege does not apply.

## BACKGROUND

¶2        The defendant, Mario Rodriguez-Ramirez, founded a Phoenix church and served as its pastor; Jose Padron joined him as co-pastor about four years later.  The two are brothers-in-law and have been friends for more than thirty years.  In 2020, allegations surfaced that Rodriguez-Ramirez had sexually abused Padron's thirteen-year-old niece.

¶3        In response to these allegations, Rodriguez-Ramirez and Padron met privately to discuss them.  Padron recorded the conversation

without Rodriguez-Ramirez's knowledge or consent. During this conversation, Rodriguez-Ramirez admitted that he secretly watched the victim shower, hugged and kissed her, acknowledged that he "touched" her, and that "she's a little girl" and "I know it's not right."

¶4　　　　Padron shared the recording with the victim's family and multiple members of the church congregation. The victim's family subsequently reported the matter to law enforcement. In 2021, the State charged Rodriguez-Ramirez with several counts related to his alleged sexual abuse of the victim.

¶5　　　　Before trial, Rodriguez-Ramirez moved to suppress the recording and the transcript of his conversation with Padron, arguing that the Clergy-Penitent Privilege applied. The State opposed the motion, asserting that because Padron was not acting in his professional capacity as a clergyman, the conversation was not privileged.

¶6　　　　The superior court conducted an evidentiary hearing, at which both Padron and Rodriguez-Ramirez testified. In determining whether the Clergy-Penitent Privilege protected their conversation, the court applied the three-part framework articulated in *State v. Archibeque*, 223 Ariz. 231 (App. 2009). To determine whether the privilege applies, *Archibeque* poses three requirements: "(1) Is the person who received the confession a 'clergyman or priest'? (2) Was the confession made while the clergyman or priest was acting in his professional capacity? (3) Was the confession made in the course of discipline enjoined by the church to which the clergyman or priest belongs?" 223 Ariz. at 234 ¶ 7. If the answer to all three is "affirmative," then the privilege applies, unless waived. *Id.*

¶7　　　　The superior court found that the first requirement was satisfied because Padron was a member of the clergy. Both Rodriguez-Ramirez and Padron testified that Padron served as a pastor in their church, and the State did not ultimately contest that status.

¶8　　　　Turning to *Archibeque*'s second requirement, the court examined the substance of the conversation and determined that Padron was not acting in his professional capacity as a member of the clergy. As the court explained, "[s]ignificant portions of the conversation surrounded optics of the allegations and how that would impact the congregation's

perception of [Rodriguez-Ramirez] and the administrative functioning of the Church." The conversation likewise focused on whether the victim's family would report Rodriguez-Ramirez to law enforcement and whether he should leave the state. Although Rodriguez-Ramirez testified that he sought spiritual guidance, the court found that testimony not credible. On that basis, the superior court denied the motion to suppress, concluding that the Clergy-Penitent Privilege did not apply.

**¶9** Although the superior court did not reach *Archibeque*'s third requirement, its factual findings necessarily resolved that issue as well. It found that Rodriguez-Ramirez discussed his sexual misconduct to "protect his reputation among his congregants, prepare an exit strategy to avoid any legal repercussions, and [to] discuss succession plan[s] for his Church." The court further found that "[g]iven the totality of the circumstances, [Rodriguez-Ramirez's] claimed belief that he thought the admissions made to Pastor Padron were confidential and for the purpose of spiritual guidance is not reasonable."

**¶10** Rodriguez-Ramirez sought special action relief. The court of appeals accepted jurisdiction and granted relief, vacating the superior court's order denying the motion to suppress concluding that Rodriguez-Ramirez's statements to Padron constituted a confession protected by the Clergy-Penitent Privilege. *Rodriguez-Ramirez v. State*, 260 Ariz. 7, 11 ¶ 2, 15 ¶ 30, 19 ¶ 60 (App. 2025).

**¶11** In reaching that conclusion, the court also applied the three-part framework set forth in *Archibeque*. *Id.* at 13–14 ¶ 21. The court concluded that the first requirement was satisfied because the parties agreed that Padron qualified as a clergyman under the privilege statute. *Id.* at 14 ¶ 25.

**¶12** Having concluded that the first *Archibeque* requirement was satisfied, the court next considered whether Rodriguez-Ramirez's statements to Padron constituted a confession received by Padron in his professional character as clergy. *Id.* ¶ 27. The court first examined whether the statements constituted a confession, recognizing that Arizona courts had not previously defined that term for purposes of the Clergy-Penitent Privilege. *Id.* at 14–15 ¶ 28. It therefore considered decisions from other jurisdictions interpreting similar privilege statutes. *Id.* at 15 ¶ 29. Finding

the reasoning of *Scott v. Hammock*, 870 P.2d 947, 951 (Utah 1994) and *State v. MacKinnon*, 957 P.2d 23, 28 ¶ 24 (Mont. 1998) persuasive, the court concluded that Rodriguez-Ramirez's conversation with Padron constituted a confession under § 13-4062(3). *Rodriguez-Ramirez* 260 Ariz. at 154 ¶¶ 29–31.

¶13 The court next considered whether Padron received that confession in his professional capacity as a member of the clergy. *Id.* at 16–17 ¶¶ 39–44. It acknowledged evidence that Padron spoke with Rodriguez-Ramirez as a friend but concluded that he nevertheless provided confidential spiritual guidance. *Id.* at 17 ¶ 51. The court, therefore, held that Padron received the confession while acting in his professional character as clergy and that the superior court erred in concluding otherwise. *Id.* at 16 ¶ 41, 17 ¶¶ 45–51.

¶14 Completing its analysis under *Archibeque*, the court concluded that the third requirement was satisfied. *Id.* at 18 ¶ 55. Based on Padron's and Rodriguez-Ramirez's testimony, it determined that Rodriguez-Ramirez confessed in conformity with the rules and customs of their church. *Id.* ¶¶ 53–55. It therefore vacated the superior court's order denying Rodriguez-Ramirez's motion to suppress. *Id.* at 19 ¶ 60.

¶15 The State filed a petition for review, which we granted to determine the standards governing the application of the Clergy-Penitent Privilege under § 13-4062(3), which is a matter of statewide importance likely to recur. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

### I.

¶16 The Legislature established the Clergy-Penitent Privilege applicable in criminal proceedings in § 13-4062(3). That statute provides: "A clergyman or priest [shall not be examined as a witness], without consent of the person making the confession, as to any confession made to the clergyman or priest in his professional character in the course of discipline enjoined by the church to which the clergyman or priest belongs." § 13-4062(3).

¶17 The Clergy-Penitent Privilege protects the "human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return." *Waters v. O'Connor*, 209 Ariz. 380, 384 ¶ 17 (App. 2004) (quoting *Trammel v. United States*, 445 U.S. 40, 51 (1980)). Consistent with that purpose, the privilege reflects a legislative response "to the urgent need of people to confide in, without fear of reprisal, those entrusted with the pressing task of offering spiritual guidance so that harmony with one's self and others can be realized." *Church of Jesus Christ of Latter-Day Saints v. Superior Court*, 159 Ariz. 24, 31 (App. 1988) (quoting *Keenan v. Gigante*, 390 N.E.2d 1151, 1154 (N.Y. 1979)).

## II.

¶18 This Court has not previously articulated the framework governing application of the Clergy-Penitent Privilege under § 13-4062(3). As discussed above, Arizona courts have applied *Archibeque's* three-part test to determine whether the privilege applies. *Supra* ¶¶ 6, 11. We now adopt the *Archibeque* framework as the governing standard for that determination.

¶19 We add an additional requirement to that framework: whether the communication at issue is a "confession." *Infra* ¶¶ 34–36. Unlike the spousal and attorney-client privileges, which protect "any communication," § 13-4062(3) protects only a "confession." Because the Clergy-Penitent Privilege applies only when the communication meets that definition, we must define the term.

### A. Is there a confession?

¶20 In *Doe v. The Corporation of the President of the Church of Jesus Christ of Latter-day Saints*, we recently construed the meaning of "confession" under A.R.S. § 13-3620(A). No. CV-25-0213-PR, 2026 WL 2203781, at *7 ¶¶ 34–35 (Ariz. July 30, 2026); *see also Waters*, 209 Ariz. at 382 n.2 (citing *MacKinnon*, 957 P.2d at 28 ¶ 27; *Scott*, 870 P.2d at 956) (noting that a "confession" under § 13-4062(3) includes "communications made in the course of religious counseling, guidance and admonishment"). Section 13-3620(A) requires the reporting of suspected child abuse but exempts clergy from that requirement when they receive a confession and determine that maintaining its confidentiality is "reasonable and necessary

6

within the concepts of the religion." § 13-3620(A). Although *Doe* interpreted a different statute, the Legislature employed the same term in the Clergy-Penitent Privilege context. *Compare* § 13-3620(A) (establishing that, under the statute creating a duty to report, a privilege holder "may withhold reporting of the communication or confession"), *with* § 13-4062(3) (establishing that "a clergyman or priest" may not be examined "as to any confession" absent "consent of the person making the confession"). When the Legislature employs the same word in related statutes addressing the same subject matter, we ordinarily presume it intended the same meaning unless context suggests otherwise. *See Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017) ("In construing a specific provision . . . we may also consider statutes that are *in pari materia*—of the same subject or general purpose—for guidance . . . ."). The two statutes, moreover, address different aspects of the same protection: § 13-3620(A) exempts a clergy member from the duty to report a confidential communication or confession when disclosure would be inconsistent with the concepts of the religion, while § 13-4062(3) shields a penitent's confession from compelled disclosure. Because the Legislature is presumed to use the same term consistently across related statutes, we decline to read "confession" differently under these two statutes. We therefore adopt the same construction for the Clergy-Penitent Privilege.

¶21 Having adopted *Doe*'s construction of the term, we turn to the definition itself. *Doe* defined "confession" consistent with the First Amendment's Free Exercise and Establishment Clause jurisprudence, as "a confidential acknowledgment or admission of a crime, sin, or fault to a member of the clergy, priest, or Christian Science practitioner for the purpose of absolution." 2026 WL 2203781 at *1 ¶ 3. We construe "absolution" by its function, not by denomination. A confession need not follow a formal sacramental rite; it is enough that the penitent discloses a crime, sin, or fault to a member of the clergy while seeking spiritual absolution, consolation, or guidance.[1] This reading is consistent with our recognition, as noted above, that a confession includes communications made in the course of religious counseling, guidance and admonishment. *Waters*, 209 Ariz. at 382 n.2. The dispositive question is not whether the

---

[1] Reading "absolution" in this manner is also necessary to avoid preferring faiths that practice formal absolution over those that do not, contrary to the Free Exercise and Establishment Clauses and article 2, section 12 of the Arizona Constitution.

penitent's tradition observes a rite of absolution, but whether the communication sought spiritual absolution, consolation, or guidance. Accordingly, a party invoking the Clergy-Penitent Privilege must first establish that the communication constitutes a confession. *See Fann v. Kemp*, 253 Ariz. 537, 541 ¶ 8 (2022) ("The party asserting a privilege has the burden of proving each of its elements."). Only if that threshold requirement is satisfied do we consider the remaining requirements governing the privilege.

**¶22** Applying this definition does not require the kind of doctrinal analysis we held impermissible in *Doe*. There, we held that determining whether a person's communication to a clergy member constitutes a confidential communication or confession is "explicitly doctrinal," and that the First Amendment places that determination beyond the purview of the factfinder. 2026 WL 2203781 at *9 ¶ 44. The test we describe here does not run afoul of that holding. A factfinder applying our definition does not assess whether a communication satisfies any particular faith's theological requirements; it asks only whether the communication sought spiritual absolution, consolation, or guidance. That question is factual—it asks what the communication was for, not whether it complied with the tenets of any religion—and it therefore does not implicate the constitutional concerns identified in *Doe*.

## B. Was the person receiving the confession a clergyman or priest?

**¶23** To satisfy the second requirement, the individual receiving the confession must be a clergyman or priest recognized under the church's "ecclesiastical rules, customs and laws." *Archibeque*, 223 Ariz. at 234 ¶ 8 (quoting *Waters*, 209 Ariz. at 385 ¶ 21). In adopting this analytical framework, we clarify that the terms "clergyman" and "priest" are not limited to members of religious organizations with ordained clergy. *See Waters*, 209 Ariz. at 384 ¶ 19. Interpreting those terms to apply only to ordained clergy would favor religious organizations that ordain clergy over those that do not, raising concerns under the First Amendment's Establishment Clause and article 2, section 12 of the Arizona Constitution. *See* U.S. Const. amend. I; Ariz. Const. art. 2, § 12; *see also Larson v. Valente*, 456 U.S. 228, 244 (1982) ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another.").

8

### C. Was the confession made while a clergyman was acting as a spiritual leader?

**¶24**         The third requirement concerns the capacity in which the clergyman or priest receives the confession. *See Archibeque*, 223 Ariz. at 234 ¶ 7. Specifically, the confession must be made while the clergyman or priest is acting in his or her "professional character." *Id.* at 235 ¶ 10. This element requires "the communication to be directed to a clergyman in his or her capacity as a spiritual leader within his or her religious denomination." *Id.* ¶ 11 (quoting *Waters*, 209 Ariz. at 385 ¶ 22). We now clarify the standard for determining whether a penitent's confession is made to a clergyman acting in his or her professional character.

**¶25**         Because the Clergy-Penitent Privilege protects the penitent's expectation that a confidential statement will remain private, the inquiry necessarily begins with the penitent's subjective understanding of the relationship. *See In re MH2023-004502*, 261 Ariz. 342, 348 ¶ 24 (2026) ("Whether a confidential behavioral health professional-client relationship exists is initially a subjective inquiry . . . ."). We limit the privilege, however, to circumstances where the penitent's subjective belief is objectively reasonable to ensure that the privilege remains confined to the communications that the statute intended to protect. This objective component prevents the privilege from turning solely on the communicant's undisclosed intentions.

**¶26**         This approach is informed by our attorney-client and physician-patient privilege jurisprudence, which similarly considers the claimant's understanding of the relationship in light of the circumstances surrounding the communication. *See Clements v. Bernini*, 249 Ariz. 434, 440 ¶ 9 (2020) ("The existence of an attorney-client relationship is evaluated by a subjective test, which examines the nature of the work performed and . . . the circumstances under which the confidences were divulged." (citation omitted)); *State v. Steelman*, 120 Ariz. 301, 317 (1978) (reasoning that, absent clear, objective evidence to the contrary, a patient's subjective belief regarding the purpose of an exam governs whether the privilege applies). We therefore conclude that this requirement is satisfied if the penitent subjectively believes that the clergyman is acting in a professional capacity when receiving the confession, provided that the belief is objectively reasonable under the circumstances.

¶27         Requiring both a subjective belief and objective reasonableness appropriately cabins the privilege. It protects a penitent whose sincere understanding of the relationship ultimately proves mistaken while preventing the privilege from extending to communications founded on an objectively unreasonable belief that the clergyman was acting in a professional capacity.

### D. Was the confession made in accordance with the church's rules and practices regarding confidential spiritual communications?

¶28         The final requirement is that the confession be made in the course of discipline enjoined by the church to which the clergyman belongs. *Archibeque*, 223 Ariz. at 235 ¶ 12. We interpret this requirement to mean that the confession must be made in accordance with the religious organization's rules, customs, or practices. We note that religious organizations differ in the extent to which they prescribe formal rules governing confessions. Regardless of those differences, the party asserting the privilege bears the burden of establishing that the confession occurred in accordance with the organization's rules, customs, or practices. *See Fann*, 253 Ariz. at 541 ¶ 8.

### E. Implied Waiver Doctrine.

¶29         Having identified the requirements for invoking the Clergy-Penitent Privilege, we next address whether, and under what circumstances, the privilege—though otherwise satisfied—may nonetheless be waived.

¶30         As explained earlier, the Clergy-Penitent Privilege belongs to the communicant of the confidential statements, not the recipient. *See* Udall & Livermore, Law of Evidence § 71 at 126 (2nd ed. 1982) ("Privileges as to confidential communications customarily belong to the person making the communication. Because it is that person's conversational privacy that is being protected only he has the right to prevent revelation."). Like other evidentiary privileges, the Clergy-Penitent Privilege is subject to implied waiver. *See Church of Jesus Christ of Latter-Day Saints*, 159 Ariz. at 29 (concluding that an evidentiary privilege may be waived by conduct inconsistent with preserving the confidentiality of the communication).

¶31         Our decision in *Bain v. Superior Court* supplies the governing standard regarding waiver.  148 Ariz. 331, 334 (1986).  There, we explained that implied waiver occurs when the privilege holder engages in a "course of conduct inconsistent with observance of the privilege."  *Id.*  Nothing in § 13-4062(3) suggests that the Clergy-Penitent Privilege is exempt from this well-settled common law principle.  We therefore conclude that the Clergy-Penitent Privilege is subject to implied waiver.  However, because waiver is not at issue here, we need not decide whether Rodriguez-Ramirez engaged in a course of conduct inconsistent with observance of the privilege.

### III.

### A.  Application of the Clergy-Penitent Privilege framework.

¶32         Applying these principles, we determine that the court of appeals erred in concluding that Rodriguez-Ramirez established the Clergy-Penitent Privilege.  The court committed two errors.  First, it failed to properly consider whether Rodriguez-Ramirez's statements constituted a confession under § 13-4062(3).  Second, it did not afford the superior court's factual findings the deference our standard of review requires.

¶33         Whether a privilege exists is a question of law and is subject to de novo review.  *See State ex rel. Adel v. Adleman*, 252 Ariz. 356, 360 ¶ 10 (2022); *see also Archibeque*, 223 Ariz. at 234 ¶ 5 (addressing Clergy-Penitent Privilege).  But courts apply an abuse of discretion standard when reviewing "any necessary fact finding conducted by the trial court in order to resolve these issues," *Archibeque*, 223 Ariz. at 234 ¶ 5, and will uphold the trial court's decision if there is "any reasonable evidence in the record to sustain it," *State v. Morris*, 215 Ariz. 324, 341 ¶ 77 (2007) (quoting *State v. Veatch*, 132 Ariz. 394, 396 (1982)).  "We consider only the evidence presented at the suppression hearing and view the facts in the light most favorable to sustaining the court's ruling."  *State v. Goudeau*, 239 Ariz. 421, 439 ¶ 26 (2016).  We also construe evidentiary privileges narrowly, as they impede the truth-seeking function of the court.  *Waters*, 209 Ariz. at 384 ¶ 16.

### B. The court of appeals failed to define what constitutes a confession.

¶34        Recognizing that Arizona courts had not previously defined the term "confession" under § 13-4062(3), the court looked to decisions from other jurisdictions for guidance. *Rodriguez-Ramirez*, 260 Ariz. at 14–15 ¶¶ 28–29. It failed, however, to either define confession for purposes of its analysis or clearly articulate a legal standard governing what constitutes a confession. Instead, it proceeded directly to the facts of this case and concluded that Rodriguez-Ramirez's statements constituted a confession. *Id.* at 15 ¶¶ 30–31.

¶35        In reaching its conclusion, the court emphasized that Rodriguez-Ramirez admitted his prior conduct and expressed concern about the harm to the victim, her family, the congregation, and the church. *Id.* ¶ 30. It also relied on portions of the conversation addressing church management, including whether Rodriguez-Ramirez should leave the church or instead address the congregation. *Id.* ¶ 31.

¶36        However, before applying § 13-4062(3) to the facts of this case, the court first should have identified what constitutes a confession under the statute. Only then could it determine whether the conversation between Rodriguez-Ramirez and Padron satisfied that definition. Absent that governing definition, the court lacked a framework for determining whether Rodriguez-Ramirez's statements qualified as a confession under the Clergy-Penitent Privilege.

### C. The court of appeals failed to defer to the superior court.

¶37        The court of appeals' analysis was flawed in a second respect. It failed to afford the superior court's factual findings the deference our standard of review requires. Those findings illustrate why such deference was warranted here.

¶38        At the suppression hearing, both Padron and Rodriguez-Ramirez testified.[2] Accordingly, the court was in a position to

_____

[2] The superior court observed that the "most credible and compelling evidence" bearing on the privilege issue was the transcript of the conversation between Padron and Rodriguez-Ramirez. Although *Clements*

gauge their respective credibility, a determination that is likewise entitled to deference. *Valley Med. Specialists v. Farber*, 194 Ariz. 363, 367 (1999) (holding that substantial deference is given to a trial court's findings of fact); *see also State v. Havatone*, 241 Ariz. 506, 516 ¶ 43 (2017) (Pelander, J., concurring). Following the hearing, the court issued a detailed ruling setting forth the factual findings supporting its conclusion that the Clergy-Penitent Privilege did not apply.[3] Among its findings, the following are most pertinent to our analysis:

> 10. The Defendant's testimony that he made the admissions to Pastor Padron in the hope of obtaining spiritual guidance is not credible . . . .
>
> 12. Significant portions of the conversation surrounded optics of the allegations and how that would impact the congregation's perception of the Defendant and the administrative functioning of the Church.
>
> 13. The parties discussed the possibilities of what would happen to the Defendant if he was reported to the authorities.
>
> 14. They discussed the possibility of the Defendant fleeing the jurisdiction.
>
> 15. Pastor Padron and the Defendant talked about Padron trying to determine if [the victim's] mother intended to report the matter to authorities, and report back to the Defendant.

---

instructs that "the court may not invade the privilege to determine its existence," 249 Ariz. at 438 ¶ 1, that concern is not present here. Because both parties jointly submitted the transcript for the court's consideration, the court was not required to determine whether the Clergy-Penitent Privilege applied without reviewing the communication itself.

[3] The superior court issued a comprehensive order that clearly set forth its factual findings and legal analysis, thereby aiding our review. Such orders promote meaningful appellate review and are encouraged.

16. Defendant was aware that, following their conversation, Padron would have contact with [the victim's] parents to discuss the allegations . . . .

20. The Defendant's purpose in disclosing the hugging, kissing, and watching [the victim] shower was to discuss ways to protect his reputation among his congregants, prepare an exit strategy to avoid any legal repercussions, and [] discuss [a] succession plan for his Church.

21. Given the totality of the circumstances, Defendant's claimed belief that he thought the admissions made to Padron were confidential and for the purposes of spiritual guidance is not reasonable.

22. The statements made by the Defendant did not take place while Pastor Padron was acting in his professional character or professional capacity as a clergyman.

The court further found Rodriguez-Ramirez's testimony not credible and self-serving while crediting Padron's testimony.

¶39 Despite these findings, the court of appeals concluded that the superior court erred by finding that Rodriguez-Ramirez lacked a reasonable belief that his conversation with Padron was confidential and undertaken for the purpose of obtaining spiritual guidance. *Rodriguez-Ramirez*, 260 Ariz. at 16–17 ¶¶ 41–45. We disagree with that conclusion.

¶40 The court of appeals' departure from the proper standard of review occurred in two respects. First, it concluded that the superior court improperly relied on Padron's discussion with the victim's family in finding that the conversation was not confidential. *Id.* at 16 ¶¶ 40–41. It reasoned that Padron's conversations with the family before meeting with Rodriguez-Ramirez—and Rodriguez-Ramirez's awareness that Padron would speak with them again afterward—did not undermine the confidential nature of their conversation. *Id.*

**¶41**        Second, the court determined that Padron provided Rodriguez-Ramirez with "spiritual advice and counsel" while acting in his professional capacity as clergy. *Id.* at 17 ¶¶ 43–51. It reasoned that "[e]ven though [Padron] testified he spoke with Rodriguez-Ramirez as a friend, he responded to Rodriguez-Ramirez's statements at least in part with clerical guidance and counsel" within "his professional character as clergy." *Id.* ¶¶ 45, 51.

**¶42**        In both respects, the court of appeals did not apply the deferential standard our precedent requires. The proper inquiry on review is not whether the evidence could support a different conclusion, but whether reasonable evidence supports the superior court's findings. *See Morris*, 215 Ariz. at 341 ¶ 77; *Goudeau*, 239 Ariz. at 439 ¶ 26. Instead, the court of appeals reweighed the evidence concerning both the confidentiality of the conversation and whether Padron was acting in his professional capacity as clergy — an inquiry that exceeds the proper scope of appellate review. *See State v. Lee*, 189 Ariz. 590, 603 (1997).

**¶43**        Applying the proper standard of review, for the reasons explained below, we conclude that reasonable evidence supports the superior court's factual findings. The court of appeals, therefore, erred in concluding that Rodriguez-Ramirez satisfied the requirements for the Clergy-Penitent Privilege.

### D. The communication was not a confession.

**¶44**        Applying the threshold step in the Clergy-Penitent Privilege framework set forth above, we conclude that Rodriguez-Ramirez failed to establish that his communication with Padron constituted a "confession" within the meaning of § 13-4062(3).

**¶45**        To invoke the privilege, the party asserting it must establish that the communication at issue constitutes a confession. *See Fann*, 253 Ariz. at 541 ¶ 8. As explained in *Doe*, we defined a confession as "a confidential acknowledgment or admission of a crime, sin, or fault to a member of the clergy . . . for the purpose of absolution." 2026 WL 2203781 at *1 ¶ 3. A communication does not cease to be a confession merely because it also includes discussion of non-spiritual matters. Similarly, a communication is not transformed into a confession merely because it contains admissions of wrongdoing, spiritual discussion, or a prayer. Instead, a communication

15

must be for the purpose of absolution, as identified in *Doe*, to be considered a confession. *Id.* at \*7 ¶ 34. The circumstances in this case—whether considered individually or collectively—did not transform the conversation into a confession protected by § 13-4062(3). Although Rodriguez-Ramirez admitted prior misconduct, he acknowledged struggling with his attraction to the victim, Padron discussed the spiritual ramifications of that conduct, and the conversation concluded with prayer, those circumstances did not meet the defining characteristics identified in *Doe*.

¶46 The superior court reasonably found that the discussion centered on protecting Rodriguez-Ramirez's reputation, addressing church administration, and minimizing the legal and practical consequences of the allegations made against him. The discussion even turned to the logistics of Rodriguez-Ramirez's flight from law enforcement, in case Padron's efforts to dissuade the victim's parents from pursuing charges failed. The record contains reasonable evidence supporting those findings, and the court of appeals therefore erred in declining to defer to them.

¶47 Collectively, those findings establish that Rodriguez-Ramirez neither sought absolution from Padron nor intended that their communication remain confidential. His communication with Padron, therefore, did not constitute a confession as defined in *Doe*.

¶48 Because Rodriguez-Ramirez's communication with Padron was not a confession, the inquiry ends there. The Clergy-Penitent Privilege does not apply. We therefore need not consider whether the remaining requirements of the Clergy-Penitent Privilege framework are satisfied.

**CONCLUSION**

¶49 We vacate the court of appeals' opinion, affirm the superior court's order denying Rodriguez-Ramirez's motion to suppress, and remand to that court for proceedings consistent with this Opinion.